**Lee CAIN, et al., Plaintiffs,**

v.

**CITY OF CHICAGO, et al., Defendants.**

**City of Chicago, Counterplaintiff,**

v.

**Estate of Michael Darrell Cain and Lee Cain, as Administrator of the Estate of Michael Darrell Cain, Counterdefendants.**

**No. 85 C 1011.**

United States District Court, N.D. Illinois, E.D.

Oct. 2, 1985.

Jeffrey Haas, Chicago, Ill., for plaintiffs.

Robert J. Quinn, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Lee Cain [1] ("Cain") brought this action individually, as the administrator of decedent Michael Cain's ("the decedent") estate and on behalf of the decedent's next of kin under 42 U.S.C. §§ 1981, 1983 and 1985. There are also several pendent state law causes of action. The defendants in this case are the City of Chicago ("the City"), Chicago Police Superintendent Fred Rice ("Rice"), Chicago police officers Gerald Dahlberg ("Dahlberg"), Robert Hacker ("Hacker") and Dorothy Stefan ("Stefan") and "John Doe" and other unknown Chicago police officers. Rice and all of the defendant police officers are named both individually and in their official capacity.

### I. *Factual Allegations*

Cain alleges that on September 14, 1983, defendants Dahlberg, Hacker and Stefan, along with other unknown Chicago police officers, were parked in an unmarked police car in the vicinity of decedent's home. Somewhere between 4:30 p.m. and 5:00 p.m., the decedent, a 28-year old black man, arrived on the block, parked his car, walked to another car parked across the street and drove away in that car. Decedent drove into a nearby alley, but was blocked on one side by the car of Dahlberg, Hacker and Stefan. Other police officers blocked off the other entrance to the alley, trapping decedent in the middle. Dahlberg, Hacker and Stefan, who were all dressed in plain clothes, allegedly got out of their unmarked car, failed to announce that they were police officers and fired approximately fifteen shots at decedent's car, sending at least four bullets into his upper body. The decedent had raised his hands up in the air at or before the time that defendants first fired their weapons. After the initial round of fire, defendant Stefan approached the decedent's slumped body and fired two or three more shots through the driver's side window into his head and neck. Decedent's body remained at the scene for over an hour before being transported to a hospital where he was pronounced dead on arrival.

---

1. Also named as a plaintiff is Andre Cain, the minor son of the decedent, by his guardian and mother, Peggy Horton. However, with respect to the present motion, Andre's claims are only relevant as a "next of kin" to the decedent.

The defendants respond that the defendant police officers when attempting to apprehend the decedent, property identified themselves, that decedent first fired upon defendants, and that defendant Dahlberg shot the decedent in self-defense.

The defendants have also filed a motion to dismiss Counts IV, V and VI of Cain's complaint pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, defendants' motion is granted in part and denied in part.

## II. *State Law Claims*

We turn first to the pendent state law claims in this action. Count IV is a claim under the Illinois wrongful death statute, Ill.Rev.Stat. ch. 70, §§ 1, 2 (1983), filed by Cain on behalf of the decedent's next of kin against defendants the City and Rice. Count V, on its face, differs little from Count IV. Its state law component constitutes a wrongful death claim against defendants the City and Rice under a theory of *respondeat superior*. Count VI is an Illinois common law claim against the City and Rice for negligent hiring, retention and entrustment of the defendant police officers.

In order to sue a local governmental entity or one of its employees under Illinois law, a plaintiff must first comply with the notice provisions of the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("the "Tort Immunity Act"), Ill.Rev.Stat. ch. 85, §§ 8–101—8–103 (1983).[2]

The Tort Immunity Act was enacted in order to provide a statutory basis for the easing of sovereign immunity principles. In their current form, its provisions require any party to file a written notice of injury with the Secretary or Clerk of any municipal entity before commencing a damage suit against that entity or any of its employees. This notice must be filed within one year of the alleged injury, must be served personally or by registered or certified mail, return receipt requested, and must contain certain details concerning the incident which caused the injury. Ill.Rev. Stat. ch. 85, § 8–102 (1983). Failure to serve notice as required by the Tort Immunity Act is a basis for dismissal and results in a bar from further suit for the injury. Ill.Rev.Stat. ch. 85, § 8–103 (1983).

The defendants have moved to have Counts IV, V and VI dismissed on the grounds that (1) plaintiffs failed to allege compliance with the statutory notice provision in their complaint and (2) plaintiffs failed to serve the City Clerk of defendant City of Chicago with the statutory notice. It is true that plaintiffs' complaint contains no reference to the Tort Immunity Act, and that compliance with the notice provisions of that Act should be pled. In other circumstances, this Court might grant leave to amend the complaint regarding statutory notice, but in the present case that would be a meaningless formality since we

2. Ill.Rev.Stat. ch. 85, § 8–102 states:
 Within 1 year from the date that the injury or cause of action, referred to in Sections 8–101, 8–102 and 8–103, was received or accrued, any person who is about to commence any civil action for damages on account of such injury against a local public entity, or against any of its employees whose act or omission committed while acting in the scope of his employment as such employee caused the injury, must serve, either by personal service or by registered or certified mail, return receipt requested, a written notice on the Secretary or Clerk, as the case may be, for the entity against whom or against whose employee the action is contemplated a written statement, signed by himself, his agent or attorney, giving in substance the following information: the name of the person to whom the cause of action has accrued, the name and residence of the person injured, the date and about the hour of the accident, the place or location where the accident occurred, the general nature of the accident, the name and address of the attending physician, if any, and the name and address of the treating hospital or hospitals, if any.

 Ill.Rev.Stat. ch. 85, § 8–103 states:
 If the notice under Section 8–102 is not served as provided therein, any such civil action commenced against a local public entity, or against any of its employees whose act or omission committed while acting in the scope of his employment as such employee caused the injury, shall be dismissed and the person to whom such cause of injury accrued shall be forever barred from further suing.

find that notice was not properly served on the City Clerk of the City of Chicago.

The following facts are not in dispute with respect to plaintiffs' attempts to comply with the Tort Immunity Act.[3] With their motion to dismiss, defendants filed an affidavit from Mary Frances Meyer, an investigator in the City Clerk's Office of defendant City of Chicago. Meyer states in this affidavit that a notice of injury was never served on the City Clerk's Office by any of the plaintiffs within one year of the time the shooting is alleged to have occurred in plaintiffs' complaint. Plaintiffs do not contest that they never served notice on the City Clerk's Office, but have submitted a copy of a notice which was served on the City Corporation Counsel's Office at 2:11 p.m. on September 13, 1984, just within one year from the date of the alleged shooting. This notice is stamped as received by the City Corporation Counsel's Office.

Defendants' central claim in their motion to dismiss is that service on the Corporation Counsel's Office fails to adequately meet the notice requirement of Ill.Rev.Stat. ch. 85, § 8–102 (1983). They also argue that, because plaintiffs' written notice does not contain a statement as to "about the hour" that the shooting occurred and is not personally signed by any of the plaintiffs, it is insufficient notice. Plaintiffs respond that their notice was sufficient to satisfy the purposes underlying the Tort Immunity Act since the Corporation Counsel's Office represents the City in legal matters. They argue that the statute should be liberally interpreted in evaluating the sufficiency of notice.

There seems to be some confusion among the Illinois courts on the extent of compliance necessary to satisfy the notice requirements of § 8–102. While some Illinois opinions profess a general rule of liberal construction of the statute and sometimes merely require "substantial compliance" with its provisions, *Reynolds v. City of Tuscola*, 48 Ill.2d 339, 343, 270 N.E.2d 415, 417 (1971); *Klein v. City of Chicago*, 10 Ill.App.3d 670, 674–75, 294 N.E.2d 755, 758 (1st Dist.1973), others have applied § 8–102 with unmitigated severity, often rendering harsh results. *See, e.g., Zavala v. City of Chicago*, 66 Ill.2d 573, 578–79, 6 Ill.Dec. 901, 903, 363 N.E.2d 848, 850 (1977) (complaint dismissed where plaintiff neglected to include in the notice the names of hospitals at which the plaintiff received treatment for his injuries); *Smith v. City of Chicago*, 92 Ill.App.3d 247, 251, 48 Ill. Dec. 125, 128, 416 N.E.2d 20, 23 (1st Dist. 1980) (typographical error in notice which stated wrong year of injury rendered notice insufficient); *Ramos v. Armstrong*, 8 Ill. App.3d 503, 506–07, 289 N.E.2d 709, 711 (3d Dist.1972) (failure to include plaintiff's address rendered the notice ineffective).

While these opinions have dealt with the adequacy of the notice's content, the present case turns on the adequacy of service.[4] Section 8–102 specifically requires the notice of injury to be served on the "Secretary or Clerk" for the entity against whom suit is to be brought (or whose employees are to be sued). In this case, notice is alleged to have been served on the City Corporation Counsel's Office. Other cases have addressed the adequacy of notice served on the wrong office and have dismissed complaints for failure to properly serve the City Clerk as required by the statute. In *People ex rel. Department of Transportation v. City of Chicago*, 36 Ill. App.3d 712, 344 N.E.2d 688 (1st Dist.1976), the plaintiff wrote a series of letters to the City Committee on Finance regarding an automobile collision between a City employee and plaintiff's property, but failed to

---

**3.** For the purposes of a motion to dismiss, the Court usually assumes the truth of the complaint's allegations and does not look beyond its four corners. However, because the parties have submitted other documents with their memoranda, we shall consider defendants' motion under Rule 56. *See* Fed.R.Civ.P. 12(b). In any event, the material facts with respect to the filing of notice of claim are undisputed.

**4.** However, the annalytical standards applied by Illinois courts in these cases seem to be identical whether the statutory compliance issue involves content or service.

serve proper notice on the City Clerk. The Illinois Court of Appeals affirmed the dismissal of the plaintiff's complaint for failure to comply with § 8–102, noting that even after being denied by the Committee on Finance, the plaintiff made no attempt to serve the City Clerk. *Id.* at 715, 344 N.E.2d at 691. *Cf. Repaskey v. Chicago Transit Authority,* 60 Ill.2d 185, 326 N.E.2d 771 (1975) (holding that notice provisions in analogous statute were not met where plaintiff served notice on wrong office). Similarly, in *Mui v. Dietz,* 559 F.Supp. 485, 490 (N.D.Ill.1983), this Court granted a motion to dismiss the plaintiff's state law claim for assault and battery, false arrest and imprisonment and malicious prosecution where the plaintiff served his § 8–102 notice on the police department rather than the City Clerk's Office.

■ It has been held that the purpose underlying the § 8–102 notice provision is to provide timely notice of an injury to a public entity, to enable prompt investigation and settlement of meritorious claims. *King v. Johnson,* 47 Ill.2d 247, 250–51, 265 N.E.2d 874, 876 (1970). While these goals might be achieved with a mere "substantial compliance" standard,[5] Illinois courts have apparently preferred a strict compliance standard where questions involving service on the proper office under § 8–102 are concerned. We are bound here, as we were in *Mui,* to follow Illinois law with respect to the requirement of strict compliance

with the Tort Immunity Act, and accordingly, the motion to dismiss the state law claims against the City and Superintendent Rice in Counts IV, V and VI is granted pursuant to § 8–103.[6] Because we base our decision on the failure of service with respect to claims against the City and defendant Rice, we need not address the issue of the sufficiency of the notice's content. Nor do we address the defendants' claim that Rice is immune from *respondeat superior* liability under Ill.Rev.Stat. ch. 85, § 2–204 (1983) which protects public employees acting within the scope of their employment from liability for the acts of others. Dismissal of this claim in Count V does not affect the plaintiffs' civil rights claims in Counts I through III, nor, as discussed below, is the federal civil rights claim against the City in Count V affected.

### III. *Federal Civil Rights Claims*

*Section 1981 Claim Against the City*

■ Count V also contains a federal claim against the defendant City under 42 U.S.C. § 1981 (1982)[7] based on a theory of *respondeat superior* for the acts of its employees, the defendant police officers. Defendants have moved to dismiss this claim as well for failure to comply with the Tort Immunity Act. However, § 1981 constitutes a federally-created cause of action, and as such, the procedural aspects of § 1981 actions are controlled by federal law except where Congress has not spoken. 42 U.S.C. § 1988 (1982).[8] Although this

---

**5.** Where Illinois courts have invoked a substantial compliance standard regarding § 8–102, the plaintiff has ordinarily included all essential elements enumerated in the statute and has served the proper office, the only question being whether the contents of the notice are sufficiently complete. *See, e.g. Bickel v. City of Chicago,* 25 Ill.App.3d 689, 323 N.E.2d 832 (1st Dist.1975).

**6.** We note as an alternative ground for dismissing Count IV that the claims set forth in Count IV are identical to those contained in Count V regarding the wrongful death claims against the City and Superintendent Rice. Since it is not alleged that defendant Rice was at the scene of the shooting, and the City cannot be directly liable for the shooting, the only basis for the wrongful death claim against these two defendants must be through vicarious liability. Count

IV is therefore totally subsumed by Count V and is unnecessary to plaintiff's claims.

**7.** 42 U.S.C. § 1981 (1982) states:
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**8.** 42 U.S.C. § 1988 (1982) states in pertinent part:
 The jurisdiction in civil and criminal matters conferred on the district courts by the

means that for certain rules of decision, such as statutes of limitations, the federal courts look to the state law for the appropriate law, *Burnett v. Grattan,* —— U.S. ——, 104 S.Ct. 2924, 2929, 82 L.Ed.2d 36 (1984), other aspects of state practice need not be complied with in maintaining a federal civil rights claim. It already has been determined that the notice provisions of the Illinois Tort Immunity Act are not applicable to federal civil rights actions under 42 U.S.C. § 1983 (1982) and 42 U.S.C. § 1985 (1982), since the Tort Immunity Act was intended to apply to common law tort claims as opposed to quasi-tort actions of a constitutional nature. *Luker v. Nelson,* 341 F.Supp. 111, 117–18 (N.D.Ill.1972); *see also Firestone v. Fritz,* 119 Ill.App.3d 685, 689, 75 Ill.Dec. 83, 87, 456 N.E.2d 904, 908 (2d Dist.1983) (citing *Luker* with approval). By the same reasoning, we now extend that holding to actions under 42 U.S.C. § 1981. Furthermore, this Court has already determined that municipalities are subject to § 1981 liability on a *respondeat superior* basis. *Haugabrook v. City of Chicago,* 545 F.Supp. 276 (N.D.Ill.1982). Accordingly, the motion to dismiss plaintiffs' § 1981 claim against the City of Chicago in Count V is denied.

*Section 1981 Claim Against Superintendent Rice*

◼ Finally, Count V includes a claim against Superintendent Rice under § 1981 based on a *respondeat superior* theory.

Defendants have moved to dismiss this claim because they claim Rice is immune from liability under Ill.Rev.Stat. ch. 85, § 2–204 [9] which protects public employees acting within the scope of their employment from liability for the acts of others. It is not clear that the protection from liability set forth in § 2–204 would be properly applicable to a federal civil rights claim. To so hold would be to permit state legislatures to draft statutes which could potentially undermine the very purposes of having federal statutes governing the protection of civil rights. Nevertheless, municipal officials have not been held liable under § 1981 solely on a *respondeat superior* [10] basis, *Trotter v. City of Chicago,* 573 F.Supp. 1269, 1275 (N.D.Ill.1983), at least not in the absence of their direct participation in the allegedly offensive acts or knowing acquiescence therein. *Preston v. City of York,* 452 F.Supp. 52, 54 (M.D. Pa.1978). Plaintiffs here have made no allegation in Count V that defendant Rice directly participated in the shooting incident, nor that he had direct knowledge or had approved of the defendant police officers' conduct. In the absence of such allegations, plaintiffs' *respondeat superior* claim against defendant Rice under § 1981 must be dismissed.

### IV. *Conclusion*

The defendants' motion to dismiss Counts IV and VI is granted. The defendants' motion to dismiss Count V is denied

provisions of this Title, and of Title "CIVIL RIGHTS," and of Title "CRIMES," for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal causes is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a

criminal nature, in the infliction of punishment on the party found guilty.

9. Ill.Rev.Stat. ch. 85, § 2–204 (1983) states:
 Except as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person.

10. It should be noted that from the standpoint of agency law, *respondeat superior* might not be an appropriate theory of liability of a supervisory municipal official in any case since it is the municipality, and not the supervisor, who is the employer of the offending subordinates. *See Jones v. City of Philadelphia,* 491 F.Supp. 284, 289 (E.D.Pa.1980).

with respect to the § 1981 claim against the City of Chicago and granted in all other respects. It is so ordered.